We welcome you here to the calm before the storm. Hopefully the storm isn't in the courtroom. We are ready to hear your cases. We have read the briefs and record excerpts. We may not have read the entire record, in fact we haven't, before we've come here. And so we appreciate record citations when those are available. Please take note of our traffic light system. When the yellow light comes on, you have two minutes. When the red light signals, you need to conclude your argument unless you're addressing an argument, a question of counsel. And what else do I have to say? I don't think, I can't remember. I don't think I have anything else to say. So we will call the first case, 17-50937, Shaw v. Villanueva, and hear from Mr. Cullen first. Thank you for God to tell them they don't have to use all their time. Yeah. Easier said than done. May it please the court. My name is Kevin Cullen. Together with my partner and my son, Casey Cullen, we represent the defendants on this appeal, the appellants on this appeal. Sheriff Villanueva and Chief Deputy Eber. The basis of our appeal is a denial by the trial court of our 12B6 motion to dismiss based upon qualified immunity. There are two related points that I want to try to get through arguing in my short time. The first one is that based upon the magistrate's report and recommendation, which was adopted by the trial judge, that the law of the case is that the plaintiff did not plead sufficient operative facts to show that the probable cause affidavit submitted by Deputy Phillips was tainted. Thus, when the magistrate, Sotelo, issued the warrant for the arrest, the broken causation rule applies and insulates Phillips and Morin, which is what the trial court found from liability, but that same logic also insulates Villanueva, the sheriff, and Eber, the chief deputy. The second point that I intend to argue is that the plaintiff attempts to get around the application of the broken causation rule as to the sheriff and the chief deputy by alleging a conspiracy. Well, the first point you need to get to is why we have jurisdiction. Why you have jurisdiction? Yes, sir. Because it's based upon qualified immunity. Well, no. And a denial of . . . All right. I apologize. I didn't ask it precisely enough. Why is this not a question of fact, which would not permit an interlocutory appeal? Okay. Because the rules require that the court must accept all well-pleaded facts in the plaintiff's complaint. However, the court doesn't accept conclusions without supporting facts, and the court doesn't accept formulaic legal recitations of a cause of action. And that's what . . . and that's exactly what the magistrate did in his report as to the defendants Phillips and Morin that we represented. However, as to Valnueva and Ebram, he said the pleadings were sufficient. We do not believe the pleadings are sufficient. We believe those pleadings are conclusory and just formulaic recitations of the cause of action. It's a 12B6 appeal, not a summary judgment appeal, right? It is a 12B6 appeal, except to the extent that the trial court considered extraneous documents in making its ruling. But that's okay. Correct. But my problem with your argument . . . well, first of all, I'm going to ask you a completely extraneous question. How did Judge Peoples get involved in the state proceedings? How did Judge Peoples get involved? Yeah. Judge Peoples is not involved. There were two other lawsuits besides this lawsuit that involved Mr. Shaw's wife, and that was in state court, and Judge Peoples was involved in that case. That was one of the lawsuits. There was another lawsuit as well in state court. I just wondered. I went to law school with him. Right. Well, and that really brings this judge to another part of our argument is that the plaintiff, as he says in his complaint, in his amended complaint, he has had two other lawsuits. He's taken depositions in those other lawsuits. He's made public information requests. He's gathered all sorts of documents. And still, when he gets down to the point of alleging that my clients, the sheriff and the chief deputy, knew that the Mutt's affidavit was false, all he can do is allege on information and belief. He doesn't have any operative facts. Isn't there some allegation or some facts about the sheriff and his chief deputy conspired to have a false affidavit? Not so much. I can't see much difference between the complaint that the Mutt's filed about what happened when he was picking up his granddaughter and the affidavit for the warrant. But there's the separate claim that the sheriff and the chief deputy conspired to create that. Yes, Your Honor. And if the plaintiff had any operative facts to support his allegation of a bald, naked assertion of conspiracy, he had some facts that said that. I've got an email. Joe Smith overheard the sheriff say they were going to go get Mr. Shaw. Mr. Mutt said, you know, I've talked to the sheriff about this and everything's taken care of. A text message, an email, deposition testimony, recordings of a dispatch radio, anything. But he has to, under the Bell Atlantic v. Twombly Supreme Court case and then Ashcroft v. Pickball, when he wants to allege some type of a conspiracy, particularly when he wants to allege a conspiracy to defeat my client's entitlement to qualified immunity, he has to plead some specific operative facts. What about the allegation that . . . well, first of all, I have to ask you about the magistrate judge report because it was not . . . it didn't say what you say it said. It let off Deputy Phillips and that other deputy off the hook, finding that they just relied on the affidavit of Mutt's. Correct. It does not touch your client or the sheriff and the deputy sheriff. So it really doesn't address the involvement of the sheriff and the deputy sheriff. Judge, it does to the extent that the plaintiff, both in his amended complaint and in his brief, and in the plaintiff's brief, the appellee's brief, he says that the conspiracy to use the false statement of Mutt's was Phillips, Ebram, and Villanueva. He even says it still in his brief today, that the three of them conspired. Well, then maybe he should have appealed the Phillips being let off. I don't see how that helps you. You see what I'm saying? The way that I believe it helps me is that I think that the magistrate and the trial court was correct in their rulings as to Phillips. I think all that was ever alleged was a conclusory allegation. He knew. Not . . . it doesn't say anything about how he knew or any evidence that he knew. Phillips was given a direct order to obtain an arrest warrant based on the complaint. Mutt's was the former sheriff, right? Mutt's was a former sheriff. That is correct, Your Honor. Mutt's was also a political opponent of Mrs. Shaw, and Mutt's is the one who supposedly wasn't even there at the school on the day of the event in question. Your Honor, I think for purposes of this appeal, the court should accept the plaintiff's well-pled facts that Mutt's' affidavit is false. I think you accept that. He has pled that Mutt's' affidavit is false, and he has said, I know it's false because I wasn't even there. Those are specific operative facts. I think that's a given. And there was something else where somebody communicated on their radio, we're going to get him. Right. Your Honor, and that was an excellent example. That was Officer Pierce. That happened several years before this incident, and when Sheriff Valnueva learned of Officer Pierce's conduct, he was terminated immediately, and that is in the plaintiff's original complaint, a First Amendment complaint. So, and let me go to, if I can, what the magistrate will- Why did Mr. Shaw have to hire Jerry Goldstein, Judge? I'm sorry, Judge? I'd say, why did Mr. Shaw think he had to hire Jerry Goldstein's firm to represent him? I don't know that, Your Honor. Well, he's a pretty hot shot criminal defense lawyer, right? I don't practice criminal law, Judge, but I assume that he is, and again, those charges were dismissed. They were dropped. They brought in a special prosecutor, and the charges were dropped. I am not contesting at all that Mutz's affidavit for the purposes of this appeal is to be treated as false. He has pled that. He pled it well. He pled facts to support it was false, but he hasn't pled any facts to show that Valnueva or Ibram knew that the affidavit was false. He has only said in a conclusory allegation that Valnueva and Ibram knew because they had conspired with Mutz. Well, if you're going to allow that type of a vague, conclusory pleading that we knew, then you consume qualified immunity every time there are multiple law enforcement defendants involved in a case. All you have to do is plead conspiracy and say we knew. It's not as if Carnes County has the biggest sheriff's department in the world, right? It's not as if Carnes County has the biggest sheriff's department. Correct, Your Honor. My dad was from Sinton, so. Correct, Your Honor. Right. Correct. But again, there's no allegation. There's no factual, operative factual allegation that says how he contends that Valnueva and Ibram knew. The same legal analysis that the magistrate went through when he said the broken causation rule insulates Phillips, the same broken causation rule should insulate Valnueva and Ibram as well. And the court, the magistrate goes through what he says were the facts, the operative facts, because he acknowledges that, you know, they've got to plead operative facts. They can't plead mere conclusions. That doesn't get them there. And so his first operative fact, this is on page six of the magistrate's report. He says plaintiff has alleged facts supporting his conspiracy. He alleges that his wife was the Carnes County judge around the time of the arrest and there was animosity. OK, they don't like each other. One of them's Republican, one of them's Democrat. They don't like each other. That's not near enough to support a claim of a conspiracy or that there was an agreement. The next thing is, he says, as a result of animosity, the plaintiff's wife filed a lawsuit against Valnueva's friend and political supporter, Pierce. The plaintiff, in his amended complaint, says that Valnueva fired Pierce. I don't know how you fire somebody, but he's your friend. And even if he is your friend, and even if he had got sued, that would provide perhaps a motive to retaliate. That might. But what the case law has said, that motive, ill will, malice, none of those are sufficient to sever the broken causation rule if there's a good faith belief that what Mutz puts in his, in this case, what Mutz puts in his affidavit is reasonable for a law enforcement person to allow. The next thing he says is that the plaintiff claims that his wife's attorney obtained documents through Carnes County through a public information request and those documents indicated that this Carnes County Patriots agenda included the assassination of Shaw, Judge Shaw. Well, Judge Shaw hadn't been the judge for eight months by the time this arrest takes place. And on top of that, the fact that my client, only my client, Villanueva, Ibram wasn't even a member of the Carnes County Patriots. The fact that Villanueva is a member of a group, like he's a member of a political party and a political party has an agenda, maybe the Republicans have an agenda of pro-life and maybe there was a fire at an abortion clinic. Well, that doesn't mean you get to just allege, well, they conspired and, you know, they're Republicans and they're pro-life. So that at least gets me to over the 12B6 hurdle. That's what's happened here. And then... Surely you can see the difference between... I'm sorry, Judge? Surely you can see the difference between the sheriff belonging to the Republican Party or whatever party he belonged to and belonging to this Carnes County Patriots, just on the surface. I think they're both protected by the First Amendment right of association. That may well be, but surely you can see a distinction as far as the facts of this case. And Judge, again, I agree that there's a big difference, but all that the association with that group shows, and that's not even a group, it's just a name somebody gave them as they're sending emails back and forth, that all that shows is that he had perhaps a motive. He had a motive to do with an alleging he did. But a motive is not sufficient. They have to plead specific operative facts. And without those specific operative facts, then the broken causation rule applies and my clients are entitled to qualified immunity. Thank you. Thank you, sir. You have time for rebuttal. Mr. Sanchez? May I have a quick question? Yes, sir. How about summarizing or outlining for us the well-pleaded facts you think show conspiracy? The well-pleaded facts that show conspiracy are set forth in a 24-page complaint, Your Honor. Yes. And I'll give a brief recitation of those facts. We all know the record shows that my client, Mr. Shaw, who's in the courtroom today, is married to Barbara Shaw, who held the position of county judge for Carnes County. From the minute she announced she was involved in bitter rivalries with the police— Now, wait. Are these well—are these pled in the complaint? I just want to know what's pled in the complaint. These are pled in the complaint. Okay. Meticulously. So everything you're going to tell us is in the complaint? Yes, Your Honor. All right. In 2009, she announces and launches her campaign. There are recounts. Her husband, Kyle Ray Shaw, participates in those recounts. He participates in her election process by funding her campaign, engaging in electioneering. As the events move forward, Barbara Shaw wins the primary and eventually wins the general election to become county judge. In the years 2010, 2011, 2012, and 2013, a number of issues were presented to the county that caused her to speak publicly involving the jail, the jail that Sheriff Villanueva was responsible for running. You'll see attached to the complaint news stories in which members from the Texas Commission of Jail Standards attended meetings to inform the county that the jail was in woeful condition. His exact word in the report is, conditions are horrible. This is a defamation. I wouldn't use that word, but that's what he used. These issues caused Judge Shaw to come into conflict with Sheriff Villanueva and other current and former elected officials as outlined in the complaint. Now let's move forward to 2013, Your Honor. And this is where Chief Deputy, we're not talking about entry-level deputy, this is Chief Deputy, states at an accident scene, of course he didn't realize that the DPS officer had a dash cam and recorder running at the time, and this is what he says, it's that truck's fault because it belongs to the county judge. I know it's their fault. F them any way you can unethically. Go ahead. You can't identify a better-plead fact than a senior supervisory authority with Carnes County making such an outrageous comment. Except Villanueva's not involved with it. Pardon? Villanueva, the sheriff, was not involved in that comment. He didn't make that comment to the sheriff. He made it to somebody else. His deputy and trusted right hand did. It's our position. He made that to the sheriff? No. I'm looking for conspiracy here, counsel, if you just get to that. Yes. If we move forward, the lawsuit is filed, March of 2014, this is one of the lawsuits that Barbara Shaw filed in response to these Carnes County Patriots. You mentioned the comment about the distinction. This is a group of people that just, the vile comments that they spread on the internet and in the community and by email is indicative of a common view of Ms. Shaw. They refer to her as a public drunk. They called her a woman of loose morals, although using more crude comments, and it combated this lawsuit. Now within a month before Moots made this false complaint, depositions were taken, in particular of Moots's wife. So when you place the Moots comment in the context of this litigation, they're going back and forth with all sorts of very, very serious accusations against each other. What period of time elapses between Moots's deposition and this alleged incident with Shaw? The alleged incident with Shaw, the woman? The arrest, that provoked the arrest. Mrs. Moots, Bobby Moots's wife, was deposed on October 17, 2014, and Moots makes his false statement on November 18, 2014. One month. 30 days. Okay. Very close in proximity. Okay. Now, prior to making that complaint, to address your question, Justice Barksdale, is Villanueva and Ebram, with Moots, the former sheriff, collaborated, they colluded, they conspired to fabricate this complaint, because they're involved in the middle of a lawsuit in which all of their emails are being exposed. All of their comments, back and forth, their defamatory statements about my client and his wife are being made. And so they come together and figure out a way, we need to shut these people up, we need to silence them. Just like what the chief deputy said. Well, frankly, arresting on this whole harassment incident isn't going to shut anybody up, right? Well, in talking to my client, spending seven hours in jail, and then having police officers tell you in the weeks and months afterward, does chill one's position. But your client didn't stop her lawsuit. No. He did not stop this lawsuit. But let me just, I mean, go ahead and tell us your facts, because then I have a question about what the magistrate judge did. Let's get to the facts surrounding the Moots complaint, because we've now gotten into November of 2014. Now, Justice Barksdale, you asked, or you questioned, about the standard to apply in this case. And it is a motion to dismiss under 12B-6. And we know, based on Iqbal and Twombly, that the plaintiff is required to plead facts that would give a court a reasonable basis to identify a plausible cause of action. That's set forth in case after case in which this circuit addresses that standard. And built into that is the assumption, the acceptance, of everything that Mr. Shaw pleads as being true. And every inference is indulged in his favor, okay? So we get to the Moots complaint. Moots makes this complaint, and it's under 42.07 of the Penal Code. I had an opportunity to learn and teach myself a little about the harassment statute, okay? Now if you read Moots' statement that is signed and notarized by Phillips, he basically says, I pull into the school, I see Mr. Shaw in a truck with the window cracked, I can't hear him say anything, and he makes this gesture. That's what Moots says. And based on that, on that flimsy claim, Phillips swears out an arrest warrant, alleging a violation of 42.07B-2. Now let's look at that harassment statute, okay? It basically states that it is a blasphemy misdemeanor, which is what Mr. Shaw was charged with, to threaten to inflict bodily injury or commit a felony in a manner that causes the victim to reasonably believe that crimes will be committed. Now I did a quick survey of some of the reported cases at the state court level on what constitutes harassment. It would come as no surprise to you that many of these claims arise in domestic disputes. A estranged husband threatens to burn down the house and kill ex-wife's father. Estranged ex-husband shows up with a machete, sharpening it, saying, I'm going to use this on you. I mean, we have concrete facts in cases that demonstrate what a harassment claim is. The remaining elements involve repeat telephone calls, emails, and then of course we have the obscene gestures. And you'll note in our brief that we repeatedly cited the fact that when Phillips converted Moose's handwritten statement into a formal complaint, he added additional criminal elements. He added the obscene gestures. Why didn't you appeal the grant of qualified immunity to Phillips? We did file an objection, Your Honor, with the district court. When the magistrate issued a memorandum, we specifically filed an objection within the ten days afforded by the statute requesting that the district court impose liability, deny Phillips qualified immunity because I don't think he's entitled to it. He was a co-conspirator. He doctored up this affidavit to enhance the severity or at least the number of claims that were made. What is the, yes, and I believe your complaint alleges that the Viena-Hueva instructed him to do that. Yes, ma'am. Yes, Your Honor. That is a well-pledged fact in our complaint that as a result of the longstanding animosity that arose during Judge Shaw's tenure and the issues involved in the jail and the Carnes County Patriots organizing in this way to smear her name and Kyle Ray Shaw's name, they got together and said, this is what we're going to do. Moots is the former sheriff, their buddies, their political cronies. We're going to file this complaint and we're going to shop it. We plead in our complaint that they shop two other JPs who wouldn't sign it. So they go to David Sotelo, who's a member of the Carnes County Patriots. If you look at our complaint at 117, we identify the justice of the peace who signed that flawed and maliciously propagated arrest warrant as a member of the Carnes County Patriots. So we don't believe in this case that JP, Justice of the Peace Sotelo, was an independent objective intermediary. He held, he was a card-carrying member of the Carnes County Patriots. So we then move into the complaint. Mr. Shaw wasn't there and the magistrate judge. Let me just say this. I mean, Judge Barksdale's asked you about allegations of conspiracy. And mainly what we have is allegations of bad blood. Whether anything ties that to these events is, except for this business that he told Phillips to doctor the affidavit, it's hard for me to understand. What I also don't understand is why the magistrate judge didn't state any reasons for denying qualified immunity to the sheriff and the deputy. He didn't explain that. He just said, here's why I'm granting qualified immunity to Phillips and Morin, Morin, Morin. But he didn't say, here's why I'm denying it to the sheriff and the deputy. I'll agree with you that the magistrate's reasoning leaves some blanks to be filled. In my reading of it, though, of his opinion, the judge relied on the 12B6 standard that this court will apply. And he makes references, Judge Bemprad makes references to the fact that we must take these pleadings as true. And when the plaintiff, in this case, Mr. Shaw, outlines this longstanding political rivalry in which law enforcement officers take the law into their own hands and fabricate false affidavits, we must take that as true at the 12B6 stage. And I think, Justice Jones, you're the one that mentioned earlier, this is not a summary judgment issue. So the standards are, at least for pleading purposes, are, in my opinion, more permissive. In fact, there's a case cited— Ash—Ash—Twombly and Iqbal do not overrule Rule 56, right? They don't—so, yeah, that's— But there's another case, though, it's the McClain—the McClain v. R case, in which this court acknowledged that there are inherent differences in analyzing a Fourth Amendment wrongful arrest claim at the 12B6 stage. In fact, there are notes in that opinion in which the court stated, we are reluctant to dismiss claims if there are sufficient facts pled at the 12B6 stage. And I think that that case is particularly applicable to Mr. Shaw's position before the court. Now, moving forward in the timeline, Mr. Shaw was arrested on December 2, 2014, and in the next 30 days or so, both the county attorney and the sitting judge recused themselves because of what's going on in Carnes County. Well, I don't think that makes any difference. The only point I wanted to make is that the special prosecutor resubmitted the case to the grand jury, which I thought was interesting, given that the position of the county was that the arrest warrant was spatially valid. Of course, we contended it wasn't. But it was submitted to the grand jury again. Now, I haven't conducted any discovery, and I haven't had a chance to depose the prosecutor to find out why he did that, but we know at record number 157 that Brian Powers was appointed prosecutor and Paul Canales was appointed as special visiting judge. On March 21, 2015, at page 156 of the record, the county attorney's office filed a motion to dismiss with a specific notation, the grand jury no-billed. No-billed the underlying criminal allegation, which is a finding of no probable cause, none whatsoever. Well, again, you know, that could, the minimalist construction of that is that they realized the moots had filed a false affidavit, and of course you couldn't go forward. I would agree with that 100%. Now, it's hard to say what your client's damages are, but anyway, you know, so he did prevail. But again, that doesn't . . . all these circumstances . . . it reeks of something foul, as one of our judges put it many years ago, but it doesn't necessarily come up to the level of facts supporting a conspiracy in agreement to violate this fellow's Fourth Amendment rights. Well, I would respectfully disagree. Right. I think that the 24-page complaint, along with the exhibits that show that the probable cause was ultimately invalid, it wasn't found to exist at all by the grand jury. So a couple of cases I think that the Court, as cited in our brief, should take a look at. There's the Hand v. Gary case, and in that case, this Court enunciated the rule that an official who maliciously seeks to obtain a facially valid warrant should not be absolved of liability because he succeeded. Okay? And I think that's the issue here in this case. And the reason that Vinaweva, Ebram, and Phillips should not be absolved of liability is that their affidavit is hopelessly, irredeemably tainted as set forth in our complaint. It is false. Mr. Shaw was not present the day that this occurred. And so this idea that the chain of causation will save Vinaweva and Ebram, I think, is not to be found or supported in the record or in the complaint. Again, referring to the McClin v. R case, I can't restate the importance and the applicability of that case to the facts and to the law in this case. Again, the Court, this Court, in the McClin case, specifically noted that allegations that an affidavit was procured maliciously and falsely in a conspiracy are sufficient to survive at the 12B6 motion. What did the McClin, the McClin plaintiff in, is that he surrendered voluntarily to the Sheriff's Department and the Court found that it wasn't clearly established at the  But it did hold, up until that point, that pleading a conspiracy, pleading that an affidavit is false and procured for the purpose of malicious prosecution. The difference in the McClin case, it seems to me, is that that fellow sued council members who had sworn out false affidavits against him and the officers who investigated and Right. I think the comparison, Your Honor, is that Mr. Shaw has done the same. But he doesn't have conspiracy. It was my understanding that he did. He did? It was my understanding. He sued, the case involved Mr. McClin making online comments about all the members of the council and implying that they were engaged in a corrupt, a corrupt exhaustion and misuse of funds. And all of them, I think there were three or four council members, filed complaints against him. Now, there was some discussion as to whether that statute was impermissibly vague and whether there was a free speech issue. But I think when you get to the Fourth Amendment analysis, the Court was spot on, was right on point in saying he pled clearly and concisely that these affidavits were falsely procured, they were supported by testimony rendered under penalty of perjury, and that he had a valid claim. And the Court agreed. The Court agreed. Again, as I stated, what happened at the end of that case was the Court held there was no clearly established right at the time to consider a voluntary, voluntarily turning yourself in as a seizure. We don't have that in this case. Mr. Shaw, we pled, was arrested, I want to say at the courthouse. He was at an auction and trying to purchase property that was being foreclosed. And he's approached by Deputy Morine and basically, turn around, put your hands behind your back. And he was held in jail for seven hours. So a very different case. And I think looking at the two-pronged test of the qualified immunity analysis, he has stated that officers violated a constitutional right, which is to be free from wrongful arrest, and that at the time of his arrest, it was clearly established that every reasonable office would know that was a violation of the law. Well, let me just ask you one more question about McClin here. On these facts, which must be taken as true, and I'm quoting from the McClin case, 866F3rd at 695. We conclude that McClin's complaint adequately alleges an unreasonable seizure because the defendants could not have believed they had probable cause to arrest him. Now, those are the arresting officers, and they said they met and conspired to create falsified affidavits. Do you think your allegations have come up to that level? I think they're right on point. I think they're almost duplicative of those claims. Okay. I think for that reason, Mr. Shaw should be allowed to proceed with this case. Okay, thank you. Thank you. All right. Cullen. Thank you, Your Honors. First, I want to say that the counsel's reference to the chief deputy making the statement about, that's the judge's husband, go F him, that is not Chief Deputy Ebram. That is a former chief deputy from years ago named Swizer, who was immediately fired for that statement by Vallenueva, again. The second thing is- That's in the complaint? I'm sorry? That's admitted in the- That is in his complaint. No, sir. It's admitted in his complaint that it was made by someone else, and he was immediately fired by the sheriff? Yes, it is in the plaintiff's first amended original complaint that the sheriff, Vallenueva, fired Swizer for making that statement. That's in his complaint. That's a well pleaded fact. We don't contest that. What Ashcroft and Twombly tell us is that you have to accept all the well pleaded facts. We don't dispute that at all. But you cannot accept naked conclusions like Phillips knew, Vallenueva knew. Let me ask you, we've heard all this in your opening argument, but let me ask you this procedurally. It is not unusual for a case like this for the judge to say, we'll conduct discovery related to qualified immunity. So the fact that you have not, if you don't get qualified immunity on the pleadings, you can still get it on Rule 56, right? Your Honor, you're right. Narrowly tailored discovery as to the issue of qualified immunity. Did that possibility come up? I do not believe that the plaintiff's pleadings rise to the level of plausibility required in Twombly and required in Ashcroft. If they rose to the level of plausibility as opposed to possibility, then yes, Your Honor, I agree with you 100%. He would be entitled to limited, tailored, narrowly tailored discovery. But Mr. Sanchez did not ask for the tailored discovery. He has not at this time. And the other part, Your Honor, of this too is plaintiff's counsel continued to talk about Phillips and Phillips being involved in this conspiracy and Phillips doctoring the affidavit, and as the court asked, but you haven't appealed as to Phillips. You haven't complained as to Phillips. Phillips turned state's evidence. No, Your Honor. And in fact, what he says in his brief on page 22, while Mr. Shaw agrees with the ultimate result reached by both the United States magistrate and the United States district judge. That's on page 22 of his brief. He says he agrees with him. So if he agrees that his pleading was too conclusory and was only a possibility and not plausible as to Phillips, that same legal analysis applies to the allegations against Villanueva and Ebram. And it really, really applies to Ebram. As, as, as Judge asked earlier, well, there's a difference between the Republican party and the, and the Carnes County Patriots. Sure there is. But, but Ebram's not even a member of the Carnes County Patriots. He doesn't even allege anywhere in his complaint that Ebram is even a member of the Carnes County Patriots. And the magistrate's factual determination of what operative facts are out there, if you read those factual, the operative facts he relies on, which I believe only show malice, Ebram's name is not mentioned anywhere there either. There are no facts alleged against Ebram anywhere in the complaint or found by the magistrate other than the bald, naked, conclusory allegation Ebram knew. And if Ebram doesn't know that Mutz's affidavit, and again, just for purposes of this hearing, that Mutz's affidavit is false, then Ebram's entitled to the same qualified immunity based upon the same break in the chain of causation that Phillips and Morin were. And, and I say, and I put it to the court. Do you have any speculation why the magistrate only granted qualified immunity to the two, Phillips and Morin, and not to the sheriff and the deputy, because- Splitting the baby? No, I don't. I think, I think what you see though, is what Judge Beery said in his order. And what Judge Beery said in his order is that this case is the result of childish political and personal feuds. And these people ought to be taking care of their community instead of wasting judicial time, effort, and money fighting with each other. At least he didn't order you two to kiss in front of the Alamo, right? No, he didn't. Thank you, Judge. I would, I would ask that the court grant qualified immunity to Villanueva and Ebram. Thank you, Your Honor. Thank you, gentlemen. May we be cleared.